# ROBERT H. FOSS

## *v.*

# THE CITY OF CHICAGO.

1. SPECIAL ASSESSMENTS — *in the city of Chicago* — *by whom to be determined* — *validity of an ordinance in that regard*    The law on the subject of special assessments in the city of Chicago, for public improvements, places the responsibility of prescribing what improvements shall be made, and the

mode, manner and extent of them, with the common council.   There is no authority for leaving it to the discretion of the Board of Public Works to determine either the mode, manner, or extent of the improvement, and an ordinance which undertakes to vest such discretion in that board is void.

2.   So where an ordinance provided that a certain street should be curbed, filled and paved, " excepting such portions of the above described work which have been already done in a suitable manner : "   *Held*, the ordinance assumed that a portion of the work upon the street designated had already been done in a suitable manner,'but what portion of it had been so done was left to the discretion of the Board of Public Works to determine, and the ordinance was therefore void.

3.   Same — *what character of defense allowed.*   The defense which is allowed to property owners, upon an application for judgment upon a special assessment, may embrace every thing which shows that the tax or assessment to collect which the proceeding was instituted, ought not to be collected.   .

4.   So it is competent in such a proceeding for a property owner to set up, as a defense, that his property was damaged by the work in question, and that being so, an assessment upon it for benefits was necessarily fraudulent.

APPEAL from the Superior Court of Chicago; the Hon. JOSEPH E. GARY, Judge, presiding.

The opinion states the case.

Messrs. HERVEY, ANTHONY & GALT, for the appellant.

Mr. M. F. TULEY, for the appellee.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

This is an appeal from the judgment of the Superior Court of Chicago, rendered upon a special assessment warrant.   The ordinance upon which the assessment was based, ordered that " West Van Buren street, from the West Dock line of the South Branch of the Chicago river to a point two hundred and seventy-five feet west thereof, and from a point three hundred and ten feet west of said dock line, to the east line of Canal street, be curbed with curb walls, filled, and paved with wooden

blocks, excepting such portions of the above described work which have been already done in a suitable manner."

The first section of chapter 7 of the city charter (Gary's Laws, 60) declares that "the common council shall have power, from time to time, to cause any street, etc., to be filled, graded, leveled, paved, curbed, walled, graveled, macadamized or planked." By the third section of the amendatory act, approved March 6, 1867, the Board of Public Works is required, upon receiving an application for the making of any improvement, etc., to proceed and investigate the same, "and if they shall determine that such improvement is necessary and proper, they shall report the same to the common council, accompanied with a statement of the expense thereof, and a *proper* ordinance or order directing the work, and shall, in such estimate, specify how much of said expense, in their opinion, may be properly chargeable to real estate especially benefited by such improvement, and how much thereof may be properly chargeable to and paid out of the general fund, or out of the proceeds of any general tax authorized to be levied by said city. The board having reported on such application, and recommending that the improvement be made, or disapproving of the doing of it, as is provided for in the above mentioned act, the common council may then, in either case, order the doing of such work, or the making of such public improvement, after having first obtained from said board an estimate of the expense thereof, and in such order specify what amount of such estimated expense shall be assessed upon the property deemed specially benefited, and what amount shall be chargeable to, and paid out of, the general fund, or out of the proceeds of any general tax authorized to be levied by said city."

This, so far as we can discover, is the very latest of the numerous amendments of the city charter pertaining to the subject in question.

And the only perceptible change in it from previous acts, seems to be the opening of additional ways to the city treasury, and for disbursing the proceeds of general taxes. It leaves the

responsibility of prescribing what improvements shall be made, the mode, manner and extent of them, where it was before, with the common council, in theory, composed of the direct representatives of the people. Such is the manifest policy of the statutes in force at the time this ordinance was passed, and there is no color of authority in any of them for leaving it to the discretion of the Board of Public Works, to determine either the mode, manner or extent of the improvement; these must be directed by a proper ordinance or order of the common council. After the ordinance is passed, the twenty-third section of chapter 7 of city charter (Gary's Laws, 70) declares that, before proceeding to make an assessment for such improvement, the commissioners shall give six days' notice, by publication in the corporation newspaper, of the time and place of their meeting for the purpose of making said assessment, "in which notice they *shall specify* what such assessment is to be for and the amount to be assessed." If the extent of the work be left to their discretion, and that discretion has not been exercised at the time of giving such notice, how could they specify in the notice what the assessment is to be for? And, we might ask, how could they make the assessment by any sort of fair standard, unless they had previously, or at the time, decided upon the extent of the work? If they did so decide, no record of it would be made; the basis would not be disclosed; it would remain hidden in their own breasts as though it were a matter in which the public had no concern.

The ordinance in this case assumes that a portion of work upon West Van Buren street, designated therein, had already been done in a suitable manner; but what portion of it had been so done is in no manner specified. Suppose, that for half the distance, curb walls had been built, and a certain kind of filling put in, by the property owners, if this work were done in a suitable manner it would lessen the expense. But no mention is made of its extent or suitableness in the report of the commissioners to the common council, in the ordinance reported, or as passed, nor in the notice of the assessment, given

358        FOSS *v.* THE CITY OF CHICAGO.        [Sept. T.,

Opinion of the Court.

by them, except in the language of the ordinance. The first point a party interested in property proposed to be assessed, would desire to ascertain would be, whether those curb walls and that filling were to be regarded as a portion of the work already done in a suitable manner. Are the walls of the proper thickness and suitably laid? Is the filling of a proper material?

Unless these questions were determined, and in a way that would be conclusive upon the city, how could such parties adopt any standard by which they could satisfy themselves, that either the original estimate of the cost and expense of the work, or the proposed assessment was reasonable and fair? If the commissioners are to decide, when will they do it? The answer is, that if they can exercise any such discretion at all, they could do it whenever they saw fit.

Every such covert, irresponsible, discretionary power as here assumed, is wholly inconsistent with a proper exercise of the high and sovereign power of taxation or eminent domain. It might be used, and it does not affect the principle whether it was so used or not, as a cover to an unfair estimate or assessment. They could easily say, if parties sought to impeach their conduct for fraud, that when they made the assessment they expected to cause the curb walls already built to be removed, because not made in a suitable manner, but afterward changed their minds. It might be used as the instrument of favoritism in letting the contracts for the work. Some parties might be made to understand that the portions of the work already done were not done in a suitable manner, and that it would all have to be removed, while others might be informed that if they got the contract the portions already done would be considered as done in a suitable manner, and be so much clear gain.

It is true, that there is nothing in the evidence introduced in this case, to show that any portion of the work had been already done. But it is recited in the ordinance, in the notice of the assessment given by the commissioners, in their oath, and in the warrant, in this language: " excepting such portions

of the above described work which have already been done in a suitable manner." If no portion of it had been done at all, why make such a recital? It is a clear affirmation that some portion of it had been so done, and the city is estopped by the record from denying it. The effect of it is an attempt to vest the board of public works with a discretion as to the manner and extent of the work, and renders the ordinance void. *Thompson* v. *Schermerhorn,* 2 Seld. 92.

The counsel for the appellant insist that the evidence introduced before the court below shows, without contradiction, that appellant's property was damaged by the work in question to the amount of thirty or forty thousand dollars, and this being so, an assessment upon it of upward of $5,000, for benefits, is necessarily fraudulent. The issue of fraud was directly made by the defense set up. Such a defense was entirely competent. The statute in this respect remains substantially as it was when the case of *Pease* v. *The City of Chicago,* 21 Ill. 500, was decided, and we re-affirm what was said in that case on this subject: "Here there is an express provision that the owner or person interested in the land may make defense, and it can not, we think, be reasonably contended that such defense shall not embrace every thing which shows that the tax or assessment, to collect which the proceeding was instituted, ought not to be collected. Less than this would be but a mockery of justice." But as the judgment must be reversed for the invalidity of the ordinance, it is unnecessary to express any opinion as to the question raised upon the evidence.

The judgment is reversed and cause remanded.*

*Judgment reversed.*

*Elias R. Bowen v. The City of Chicago.

Per Curiam: This was an application for judgment upon the collector's report of a warrant for a special assessment for curbing, grading, and paving with wooden blocks, a portion of Park avenue.

The ordinance and other proceedings were like those in the case of *Foss* v. *The City of Chicago.* In that case the ordinance was held void. This case must be decided in the same way; the judgment of the court below is therefore reversed and the cause remanded.

*Judgment reversed.*