COUNTY OF DEWITT

v.

CITY OF CLINTON.

*Opinion filed February 21, 1902.*

1. SPECIAL ASSESSMENTS—*ordinance must specify nature, character and description of improvement.* While the city council may decline to adopt the draft of the ordinance prepared by the improvement board, yet any ordinance adopted by it must prescribe the "nature, character, locality and description" of the improvement.

2. SAME—*establishment of street grade cannot be delegated to city engineer.* The establishment of a street grade is a legislative function which must be exercised by the council, and such power cannot be delegated to the city engineer or other official.

3. SAME—*when provision for street crossings is invalid.* A paving and curbing ordinance is invalid which provides that "raised crossings, constructed in conformity with the plans of the same adopted by the board of local improvements, will be laid at all street intersections, *and at such other places as the board may deem necessary.*"

4. SAME—*when paving ordinance is uncertain.* An ordinance for paving and curbing "the public square" leaves uncertain the question whether it was intended to pave the streets surrounding the square, or the area embraced within the square, particularly where there is a provision that "a line of curbing shall be set along each side of the public square."

WRIT OF ERROR to the County Court of DeWitt county; the Hon. C. C. STALEY, Judge, presiding.

ARTHUR F. MILLER, State's Attorney, and HERRICK & HERRICK, for plaintiff in error.

MICHAEL DONAHUE, and GEORGE K. INGHAM, for defendant in error.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This is a writ of error to bring into review the judgment of the county court of DeWitt county confirming a special assessment levied by virtue of an ordinance adopted by the city of Clinton, providing for the grading, paving and curbing of the "public square" in the city of Clinton. The judgment was rendered by default.

A number of objections urged against the judgment confirming the assessment are based upon the insistence the ordinance does not describe the nature, character, locality and description of the improvement proposed to be made.

The ordinance was adopted under the act entitled "An act concerning local improvements," approved June 14, 1897. (Hurd's Stat. 1899, p. 362.) Counsel for the defendant in error insist that under the said act of 1897 it is only necessary the frame of an ordinance which section 8 of the act requires shall be prepared by the board of local improvements to be submitted to the city council, shall prescribe the nature, character, locality and description of the proposed improvement, and that the act contains no provision requiring that the ordinance as finally adopted by the city council shall so prescribe, and remind us that we held in *Givins* v. *City of Chicago*, 188 Ill. 348, that it is not by this act made "the duty of the council to adopt the draft of an ordinance prepared and presented by the board, but only to pass an ordinance for the improvement." While it is true the city council, in the exercise of its legislative power, may decline to adopt the draft of the ordinance prepared by the board of local improvements, yet any ordinance adopted by the city council must contain a description of the "nature, character, locality and description" of the proposed improvement. Section 8 of the act must be construed to require such a provision to be inserted in any ordinance that may be enacted by the city council.

We think the contention of the plaintiff in error that the ordinance here involved does not describe the improvement as required by the statute is well taken. Section 1 of the ordinance is as follows: "That the public square in said city be improved by grading, paving with brick, and curbing with either Oolitic limestone or Berea sandstone curbing." Section 3 of the ordinance provides that "the square, including the approaches thereto, shall

be graded to such a grade and cross-sections as the engineer may direct, the sub-grade of the square to conform to the proper crown of the pavement." The ordinance does not disclose what is meant by the "approaches" to the public square, nor does it fix, expressly or by any mode of reference, the height of the grade, the sub-grade or the crown of the pavement. If by "approaches" is meant the streets opening upon the public square, the ordinance is clearly defective in failing to specify the extent to which such streets shall be graded. This seems to have been intended to be committed to the discretion and judgment of the city engineer, whom the ordinance purports to authorize to fix the grade of the approaches and the sub-grade of the square. At least the height of the grade of the approaches and the sub-grade of the square would determine the extent to which the streets constituting the approaches to the square would be filled or excavated back from the line of the square. The establishment of the grade, as we have frequently held, is a legislative function, and must be exercised by the council, and that such power cannot be delegated by the city council to the city engineer or other official. *Foss* v. *City of Chicago*, 56 Ill. 354; *Lake Shore and Michigan Southern Railway Co.* v. *City of Chicago*, 144 id. 391; *Cass* v. *People*, 166 id. 126.

The ordinance, in the third section thereof, further provides that such filling or excavation shall be made as is necessary to bring the square to the sub-grade as fixed by the engineer, and that upon such sub-grade shall be placed the concrete foundation, a bed of sand and the pavement of brick. The excavation and the filling which may be found necessary to bring the square to the grade as fixed by the engineer are left to depend wholly upon the action of the engineer in fixing the sub-grade. We have so frequently condemned such attempts on the part of city councils to confer upon unauthorized officials or individuals discretionary power to direct the mode, man-

ner and extent of such improvements, that citation to such decisions is entirely unnecessary.

The ordinance further provided that "raised crossings, constructed in conformity with the plans of the same adopted by the board of local improvements, will be laid at all street intersections, and at such other places as the board may deem necessary." The provision that crossings should be made "at such other places as the board may deem necessary" needs but to be mentioned to be condemned.

Counsel for plaintiff in error say the ordinance erroneously designates the "public square" as the property to be graded, paved and curbed. They insist the "public square" is the plat of ground belonging to the county on which the court house is situate. Counsel for the defendant in error insist the term "public square" properly describes or is the name of the four streets which surround the plat of ground owned by the county and on which the court house stands. In ordinary acceptation the words "public square" would be understood to mean the plat of ground devoted to public purposes, and not the territory of the streets adjoining the sides of the public square. If, however, the streets so surrounding a plat of ground on which the court house is located should be marked and designated on the plat of the city or village, by the proprietor thereof, as the "public square," we see no reason why such designation might not be a sufficiently definite description of the territory occupied by such streets. In the assessment roll upon which the judgment of confirmation was rendered the plat of ground within or surrounded by the streets is called the "public square." The city, as a matter of course, possessed no authority to direct that the plat of ground belonging to the county should be improved by grading, paving and curbing it, and if the words "public square" be given their ordinary signification the ordinance would be invalid, for the reason the city is wanting in authority to improve

the public property of the county. If, however, as counsel for defendant in error insist, the words "public square" are a definite description of the space occupied by the streets which surround the plat of ground owned by the county, then the ordinance is rendered indefinite in another particular. Section 3 of the ordinance, among other things, provides "a line of curbing shall be set along each side of the public square, and that said curbing shall consist of Oolitic limestone or Berea sandstone," etc. If the public square is the space occupied by the four streets surrounding the public ground owned by the county, such public square will have four outside sides and four inside sides. No one could tell with any certainty whether the "line of curbing" should be set along each outside side of the square or each inside side of the square, or on each inside and each outside side thereof. If on the outside side of the square, there would be no provision whatever for sidewalks, but the curbing of the roadway of the streets would be at the lot lines of the property abutting on the public square. The provisions of the ordinance with reference to the curbing are altogether too indefinite to meet the requirements of the statute, unless the words "public square" refer to the plat of ground owned by the county, and if the words "public square" do refer to the plat of ground owned by the county, then the ordinance must be condemned for the reason the city is without authority to order such "public square" to be graded, paved and curbed or otherwise improved.

It is unnecessary we should discuss and determine many other objections urged against the validity of the ordinance. The ordinance is clearly invalid, and the judgment confirming the assessment against the plaintiff in error thereunder must be and is reversed.

*Judgment reversed.*